IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**MONONGAHELA VALLEY** )
**HOSPITAL, INCORPORATED**, )
)
      Plaintiff, )
)
      v. ) 2:18cv371
) **Electronic Filing**
**UNITED STEEL, PAPER AND** )
**FORESTRY, RUBBER,** )
**MANUFACTURING, ENERGY,** )
**ALLIED INDUSTRIAL AND SERVICE** )
**WORKERS INTERNATIONAL UNION** )
**AFL-CIO, CLC**, )
)
      Defendant. )

**MEMORANDUM OPINION**

May 10, 2019

**I.**     **INTRODUCTION**

Plaintiff, Monongahela Valley Hospital, Inc. (the "Hospital") initiated this action by Complaint against Defendant, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (the "Union"), asking this Court to vacate the decision of Labor Arbitrator, Gerald Kobell (the "Arbitrator"), dated February 20, 2018. The parties filed Motions for Summary Judgment, and the matter is now before the Court.

**II.**     **STATEMENT OF THE CASE**

The Hospital and the Union are parties to a Collective Bargaining Agreement (the "CBA") dated July 1, 2014 to June 30, 2017. Union's Concise Statement of Material Facts ("Union CSMF") ¶ 1. The scheduling of vacation for bargaining unit employees is governed by Section 13(B) of the CBA. Union CSMF ¶ 4. Specifically, Section 13(B)(6), the clause at the center of the controversy, provides:

> Vacation will, **so far as possible**, be granted at the times most desired by employees; **but the final right** to change vacation periods is **exclusively reserved to the Hospital**. Any changes in vacation schedules may be realized by mutual consent. In the event the **Hospital unilaterally changes** a schedule causing the employee to suffer financial loss, the Hospital agrees to reimburse the employee for provable loss.

*Id.* (emphasis added)

In late December, 2016, a dispute arose between bargaining unit employee Carol Konsugar ("Konsugar") and her working supervisor concerning Konsugar's desired vacation. Konsugar's vacation request was denied by the Hospital because the working supervisor in Konsugar's department selected the same vacation week, and the Hospital determined that both employees could not be absent from the facility at the same time. Union CSMF ¶ 5. The Union filed a grievance regarding the Hospital's decision, the grievance was processed to arbitration, and a hearing was held before the Arbitrator on December 15, 2017. Union CSMF ¶¶ 5 & 6.

The Arbitrator issued a written Decision and Award (the "Award") on February 20, 2018, which sustained the grievance, and ruled that, under the CBA, the Hospital cannot "deny bargaining unit employees their desired vacations solely because their working supervisor also desires that same time, when the employee's duties and responsibilities are identical to the working supervisor and no operating need prevents the bargaining unit employee from receiving the preference." Union CSMF ¶ 7; Union Ex. B, p. 23. In support of his decision, the Arbitrator stated:

> On the other hand, the Agreement does contain language in the vacation provision that vacations, so far as possible, be granted at times most desired by employees. I cannot conclude that the subsequent reservation of exclusivity in allocating vacations entirely to the Hospital completely negates the first principle, "so far as possible." If that were true, the rights of the bargaining unit personnel with respect to vacations could always be negated. I also cannot conclude that the Personnel Manual, by utilizing the same language, affords a perfectly equal right to non-bargaining unit employees. . .

2

> I will also grant the grievance to the extent that the Hospital may not reserve unto itself and the working supervisor the right to deny senior employees in the bargaining unit their desired vacation, when there is no operating need for the employee to be present during the desired vacation week because of skills, ability, and responsibilities that cannot also be performed by the working supervisor, notwithstanding the Hospital's reservation of the exclusive rights contained in Section 13 (6) of the Agreement.

Union CSMF ¶ 7; Union Ex. B, p. 20-21, 22.


### III. LEGAL STANDARD FOR REVIEW OF ARBITRATION AWARD

The District Court has jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1, *et seq.*, review of an arbitration award is quite narrow. *Akers National Roll Co. v. United Steel, Paper and Forestry, Mfg., Energy, Allied Industrial and Services Workers International Union*, 712 F.3d 155, 160 (3d Cir. 2013). The role of the court is not to review the merits of the decision or correct factual or legal errors. *Dauphin Precision Tool v. United Steelworkers of America*, 338 Fed. Appx. 219, 222 (3d Cir. 2009). Instead, appellate courts have emphasized the very deferential role that courts have in reviewing arbitration awards. *Pennsylvania Power Co. v. Local Union No. 272 of the International Brotherhood of Electrical Workers, AFL-CIO*, 276 F.3d 174, 178 (3d Cir. 2001) *see also Akers Nat'l Roll Co.*, 712 F.3d at 165 ("The *sine qua non* of judicial review of an arbitration award is a heavy degree of deference to the arbitrator.").

The federal policy of encouraging arbitration of contract disputes essentially has given rise to "a strong presumption in favor of the [arbitrator's] award." *Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 165 (3d Cir. 1986). This presumption generally can be overcome "only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop." *Akers National Roll Co.*, 712 F.3d at 160 (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d

3

Cir.1969)). "In other words, an award may be set aside when an arbitrator manifested a disregard of his authorization, and instead 'dispense[d] his own brand of industrial justice.'" *Pennsylvania Power Co.*, 276 F.3d at 179; *see also Exxon Shipping Co. v. Exxon Seaman's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996) ("[W]e must enforce an arbitration award if it is based on an arguable interpretation of the collective bargaining agreement, and we may only vacate an award if it is entirely unsupported by the record or if it reflects a 'manifest disregard' of the agreement.").

Despite the highly deferential language, the court's role is not simply to "rubber stamp" the arbitrator's decisions. *Matteson v. Ryder System, Inc.*, 99 F.3d 108, 113-14 (3d. Cir. 1996); *see Leed Architectural Prods., Inc. v. United Steelworkers of America, Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990) ("This great deference, however, is not the equivalent of a grant of limitless power."). A district court may vacate an arbitration award if, *inter alia*, "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). In addition to the manifest disregard of the agreement, the arbitrator's manifest disregard of the law also provides a basis for disturbing an award. *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995). Unless the arbitrator's award fails to "draw its essence" from the parties' CBA — such that there is "absolutely no support at all in the record justifying the arbitrator's determinations" — the Court must enforce the award reached through arbitration. *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995).

"'[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.'" *Akers Nat'l Roll Co.*, 712 F.3d at 160 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). To vacate, a court must find that

4

the arbitrator's award "ignore[s] the plain language of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

**IV.     DISCUSSION**

The issue before the court is whether the Award "draws its essence" from the CBA. A decision does so:

> if the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention; only where there is manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

*Akers Nat. Roll Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 712 F.3d 155, 160 (3d Cir. 2013) (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969)).

The Union argues that the Arbitrator's decision "draws its essence" from the CBA, and the Court must, therefore, uphold the Award and grant the Union's motion for summary judgment. The Hospital, however, argues that the Arbitrator acted in manifest disregard of the plain language of the CBA, and essentially rewrote the CBA with an irrational interpretation of the Hospital's exclusive right "to allow" or "to change" vacation periods. This Court agrees that the Arbitrator's Award ignores the plain language of the CBA, nonsensically elevates the phrase "so far as possible" over the Hospital's reservation of an exclusive right to approve or change vacation periods, and adds the requirement that there be an "operating need" for the employee's presence during the desired vacation week before such vacation can be denied, where no such requirement exists in the CBA.

If an arbitrator changes the terms of a contract rather than interprets it, a court may overturn the arbitrator's decision. *See Poland Spring Corp. v. United Food and Commercial*

*Workers Int'l Union, Local 1445*, 314 F.3d 29, 35 (3d Cir. 2002) (finding that an arbitrator "impermissibly substituted his own notions of industrial justice over those established in the contract" when he reinstated a worker fired for insubordination because "mitigating circumstances" existed, even though the contract did not require the consideration of such circumstances).

At issue in this instance is the scheduling of vacation for bargaining unit employees as governed by Section 13(B) of the CBA. Section 13(B)(6) specifically provides:

> Vacation will, **so far as possible**, be granted at the times most desired by employees; **but the final right** to change vacation periods is **exclusively reserved to the Hospital**. Any changes in vacation schedules may be realized by mutual consent. In the event the **Hospital unilaterally changes** a schedule causing the employee to suffer financial loss, the Hospital agrees to reimburse the employee for provable loss.

*See* Hospital Exhibit A (emphasis added). In its interpretation of the CBA, the Court looks to the agreement, "viewed in light of its language, its context, and any other indicia of the parties' intention." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d at 1128. The Court, therefore, looks to prior agreements between the parties in its interpretation of the Section 13(B)(6).

In the 1974 CBA, the first agreement between the parties, the vacation scheduling section provided:

> Each employee's vacation period shall be designated by the Hospital to meet the requirements of operating conditions; provided however, that the period preferable to the employee on a departmental basis shall be selected whenever possible.

Hospital Exhibit 1, p. 46. Under the language of the 1974 CBA, the Hospital's discretion was clearly limited by its operating needs. In 1979, the language of the 1977 CBA was changed to the language that is currently in the 2017 CBA, which gave the Hospital the exclusive right to schedule or change a vacation period and eliminated the operating needs restriction. *See* Hospital Exhibit 2, p. 22. In attempt to change the CBA in 2009, the Union proposed the following

6

language regarding vacations: "Non-bargaining unit employees will not be given vacation preference over bargaining unit employees." *See* Hospital Exhibit 5. p. 2. The Arbitrator, in fact, agreed that such proposal "was a recognition by the Union that the [CBA] did not grant its members preemptive vacation rights, and a recognition that the Hospital did not recognize any such rights." Union Ex. B, p. 16. Moreover, in addressing Section 13 of the CBA, the Arbitrator found that it was "not ambiguous" and that the CBA stated "what the parties intended." *See* Union Ex. B, p. 11.

Despite the failure of the Union's attempt to limit the Hospital's discretion with regard to preferred vacations, the Arbitrator granted the Union what collective bargaining negotiations could not, and found that the Hospital's exclusive right to allocate vacations cannot negate "the first principal 'so far as possible,'" otherwise the rights of the bargaining unit "could always be negated." *Id.* at p. 21. The Arbitrator fails to explain which rule of contract construction he relied upon to determine "so far as possible" is the "first principle" of Section 13(B)(6), nor does he reconcile such construction with his finding that Section 13 was not ambiguous and stated the clear intentions of the parties. Further, the Arbitrator ignores the Hospital's unilateral right under Section 13(B)(6) to change a schedule. The Arbitrator's interpretation clearly makes such language meaningless.

The fundamental or paramount question in the legal construction of all contracts is a determination of the real intention of the parties. *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d at 1131 (citing WILLISTON, INTERPRETATION AND CONSTRUCTION OF CONTRACTS, Ch. 22, § 601; 17A C.J.S. Contracts § 295). A contract must be construed as a whole and wherever possible, effect will be given to all its parts. *Id.* (citing WILLISTON, Ch. 22, § 619; 17A C.J.S. Contracts § 297). Moreover, if the language of an agreement is clear and unequivocal, an arbitrator cannot

7

give it a meaning other than that expressed by the agreement. *Georgia Pacific Co. v. Local 27, United Paperworkers Int'l Union*, 864 F.2d 940, 944 (1st Cir. 1988).

A collective bargaining agreement must also be viewed in the context of what the Supreme Court has characterized as "the industrial common law." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d at 1131. In *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960), the Supreme Court stated: "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law -- the practices of the industry and the shop -- is equally a part of the collective bargaining agreement although not expressed in it." *Id.* at 581-582. Notwithstanding, "in labor arbitration . . . the power and authority of an arbitrator is totally derived from the collective bargaining agreement and [] he violates his obligation to the parties if he substitutes 'his own brand of industrial justice' for what has been agreed to by the parties in that contract." *Georgia Pacific Co. v. Local 27, United Paperworkers Int'l Union*, 864 F.2d at 944 (quoting *United Steelworkers v. Enterprise Wheel & Car*, 363 U.S. 593 (1960).

In this instance, the Court finds that the Arbitrator's interpretation of Section 13(B): (1) was a manifest disregard of the plain language of the CBA; (2) ignored the clear intentions of the parties; and (3) failed to construe such provision to give effect to all parts of the provision. The Arbitrator chose to elevate the phrase "as far as possible" over the Hospital's reservation of the exclusive "**final right** to change vacation periods." In doing so, he ignored the qualifying "but" and substituted his own brand of industrial justice, stating that "[otherwise] the rights of the bargaining unit personnel with respect to vacations could always be negated." Moreover, such finding by the Arbitrator is contrary to his acknowledgement that the Union's attempt to add the language "Non-bargaining unit employees will not be given vacation preference over bargaining unit employees" to the CBA in 2009, recognized that the CBA did not grant its members

8

preemptive vacation rights. The clear intent of the parties to the CBA was to give the Hospital the discretion and exclusive right to determine vacation preferences among and between non-bargaining unit employees and bargaining unit employees[1].

Also troubling is the Arbitrator's finding that:

> . . . the Hospital may not reserve unto itself and the working supervisor the right to deny senior employees in the bargaining unit their desired vacation, when there is **no operating need** for the employee to be present during the desired vacation week. . .

Union Ex. B, p. 22 (Emphasis added). The operating needs restriction has not been in a CBA between the parties since 1979 when such language was removed. The Arbitrator unilaterally changed the terms of the CBA by implementing an operating needs restriction. As this Court noted above, if an arbitrator changes the terms of a contract rather than interprets it, a court may overturn the arbitrator's decision. *See Poland Spring Corp. v. United Food and Commercial Workers Int'l Union, Local 1445*, 314 F.3d at 35.

Finding a "manifest disregard" for the plain language of the CBA, and finding that the Arbitrator has implemented his own brand of industrial justice, the Court shall grant the Hospital's motion for summary judgment and vacate the decision of the Arbitrator.

## V. CONCLUSION

Based on the foregoing, the Hospital's motion for summary judgment shall be granted, the Union's motion for summary judgment shall be denied, and the Decision and Award of the Arbitrator dated February 20, 2018, shall be vacated. An appropriate Order follows.

---

[1] Disputes regarding vacation preferences have been less than prevalent, as the Union noted only three (3) prior instances, one in 2006, one in 2011, and one in 2016, when bargaining unit employees were not granted their selected vacation schedule because it was also selected by a working supervisor. Union Ex. B, p. 6.

9

s/ DAVID STEWART CERCONE  
David Stewart Cercone  
Senior United States District Judge

cc:  Hayes C. Stover, Esquire  
 Anthony P. Resnick, Esquire

 (*Via CM/ECF Electronic Mail*)